505 A.2d 360

Stephen Marion, Appellant *v.* William J. Green, Mayor, City of Philadelphia and Morton B. Solomon, Police Commissioner, City of Philadelphia Police Department, Appellees.

Argued December 11, 1985, before Judges CRAIG and COLINS, and Senior Judge KALISH. Reargued December 11, 1985, before President Judge CRUMLISH, JR., Judges ROGERS, CRAIG, MACPHAIL, DOYLE, COLINS and PALLADINO.

*Anthony J. Malloy,* with him, *Richard G. Freeman, Bloom, Ocks* and *Fisher,* for appellant.

*Ralph Teti,* with him, *Jesse Milan, Jr.,* Assistant City Solicitor, for appellees.

OPINION BY JUDGE CRAIG, February 19, 1986:

On January 10, 1980, the Philadelphia Police Department dismissed Officer Stephen Marion for engaging in conduct unbecoming an officer. Marion appealed that dismissal to the Philadelphia Civil Service Commission. The commission concluded that the department failed to establish just cause for appellant Marion's dismissal and, by order of November 12, 1980, sustained his appeal. The commission ordered

the appellant reinstated to his former position, on the first day of the next pay period, subject to one year's probation, because the commission concluded that, although Marion's conduct did not amount to just cause for dismissal, it was not without fault.

Despite the commission's issuance of that order, the police commissioner required that Marion submit to a physical examination, a background check and interview, and a polygraph examination to determine his continued fitness for duty before he would reinstate the officer. Marion passed the medical examination and submitted without objection to the interview and background check, but refused to submit to the polygraph examination.

Marion filed a complaint in mandamus in the Court of Common Pleas of Philadelphia County, requesting that the trial court order the defendants, the mayor and police commissioner (the city), to reinstate him immediately to the position of patrolman. Both parties moved for summary judgment on the mandamus action.

The court dismissed Marion's motion and granted summary judgment in favor of the city, citing *Kleschick v. O'Neill*, 35 Pa. Commonwealth Ct. 130, 384 A.2d 1370 (1978), in which case this court concluded that the Philadelphia Police Department, where the civil service commission has ordered a reinstatement, may subject the officer to medical examination before reinstating him. Addressing section 9.1411 of the Civil Service Regulations of Philadelphia, expressly requiring a medical examination before reinstatement,[1] we stated:

---

[1] Section 9.1411 of the Civil Service Regulations of Philadelphia provides:

An employee who is reinstated or has been absent from work for a period of three (3) months or longer due to

The regulation in question is clearly applicable to the appellant. He has not alleged nor is there any evidence that the regulation, or the accompanying policy of rejecting those people who suffer from certain congenital back defects, have been applied to him in bad faith or in an otherwise arbitrary manner. Furthermore, the establishment of objective medical criteria which an applicant for a position with the Department must meet is an act which lies within the sound discretion of the appellees.

*Kleschick,* 35 Pa. Commonwealth Ct. at 132, 384 A.2d at 1371. *Kleschick* did not involve the police department's discretion in determining an officer's fitness for duty, as to matters other than medical fitness.

Of central concern here is Marion's contention that the department has applied its asserted policy of requiring lie detector examination of reinstated employees to him arbitrarily and in bad faith. The trial court, relying upon an affidavit of the Personnel Officer and Acting Director for the Philadelphia Police Department,[2] concluded that "the use of the polygraph

---

layoff, illness, leave without pay, or military leave shall be required to pass satisfactorily a medical examination before returning to work.

[2] Personnel Officer Leonard Lebowitz stated:

It is the policy of the Department to require all applicants for reinstatement to a position in the Department who have been absent due to resignation or retirement, to submit to a medical examination, an interview and a polygraph examination concerning activities since separation from the Department.

This court notes that Officer Lebowitz's affidavit states that the policy applies to applicants for reinstatement who have been absent due to resignation or retirement. Here, applicant Marion's absence was due to disciplinary reasons.

is the standard procedure upon reinstatement and . . . its use in the instant case would be in no way arbitrary.'' The trial court believed that 18 Pa. C. S. §7321 provides statutory authority for the department's use of the polygraph.[3]

However, in *Kleschick v. O'Neill*, 35 Pa. Commonwealth Ct. 130, 384 A.2d 1370 (1978), we held applicable to the appellant, who had been absent due to a disciplinary suspension, a medical examination regulation, which addressed reinstated employees who had been absent "due to layoff, illness, leave without pay, or military leave." We stated that the appellant's absence constituted the "same situation" as the reasons set forth in the regulation, and concluded, "[s]urely it could not be successfully argued that his status of disciplinary suspension gives him greater rights to return to duty than a layoff, a military leave or leave without pay." *Kleschick*, 35 Pa. Commonwealth Ct. at 132, 384 A.2d at 1371.

In contravention to Officer Lebowitz's affidavit, Marion introduced the affidavit of John Sewell, a Philadelphia police officer dismissed by the commissioner for conduct unbecoming an officer. Mr. Sewell stated that he was ordered reinstated by the Philadelphia Civil Service Commission eighteen months after his dismissal, and approximately four months before the commission issued Marion's reinstatement order. The department reinstated him without requesting that he take a lie detector test, and at no time was he informed of a policy requiring reinstated officers to take lie detector tests.

[3] Section 7321 of the Crimes Code, 18 Pa. C. S. §7321, provides:

> *(a) Offense defined.*—A person is guilty of a misdemeanor of the second degree if he requires as a condition for employment or continuation of employment that an employee or other individual shall take a polygraph test or any form of a mechanical or electrical lie detector test.
>
> *(b) Exception.*—The provisions of subsection (a) of this section shall not apply to employees or other individuals in the field of public law enforcement or who dispense or have access to narcotics or dangerous drugs.

In a footnote in *McMullin Appeal*, 41 Pa. Commonwealth Ct. 474, 476-77 n.1, 401 A.2d 572, 574 n.1 (1979), we discussed the possible implication that this section of the Crimes Code grants the employing agency authority to require the polygraph as a condition of continued employment in law enforcement, but that issue was not directly involved in the case.

The specific question we address[4] is whether the Philadelphia Police Department may condition the reinstatement of a returning officer upon his compliance with an unwritten policy that returning officers submit to a polygraph examination to determine continued fitness for duty, where the policy rests upon "standard Police Department procedure," rather than upon a written and duly promulgated rule or regulation.

The present case is distinguishable from *Kleschick,* where the pertinent regulation was included in the express civil service regulations.

It is also distinguishable from *Fabio v. Philadelphia Civil Service Commission,* 489 Pa. 309, 414 A.2d 82 (1980), where the Supreme Court upheld an officer's dismissal under a rule prohibiting "conduct unbecoming an officer," despite the absence of specific definitions of such conduct, because the police department could not practicably write that regulation with greater specificity. The court stated:

> The United States Supreme Court has recognized that 'it is not feasible or necessary for the Government to spell out in detail all that conduct which will result in retaliation. . . .' The courts have also realized that there are areas of human conduct where, because of the nature of the problems presented, lawmakers cannot establish standards with precision. . . . Lawmakers are not confined to a choice of either enacting a detailed code of employee conduct or having no code.

---

[4] The decision to grant relief in a mandamus action is within the discretion of the trial court. Our scope of review is limited to a determination of whether, in reaching that decision, the trial court abused its discretion or committed error in applying the law. *Porter v. Board of Supervisors of North Franklin Township,* 82 Pa. Commonwealth Ct. 440, 474 A.2d 1241 (1984).

*Fabio,* 489 Pa. at 319, 414 A.2d at 87 (citations omitted).

Clearly, where the department is unable to anticipate the infinite range of circumstances which could constitute "conduct unbecoming an officer," the department need not itemize all unacceptable conduct.

However, where the department is dealing with information-gathering procedures, which it has stated are "standard," a properly promulgated rule is essential. In *Pennsylvania State Board of Pharmacy v. Cohen,* 448 Pa. 189, 200, 292 A.2d 277, 282 (1972), the Supreme Court stated:

Neither the legislatively chosen agency . . . nor the courts may imagine rules or standards for conduct not properly adopted or announced in advance. . . .

The mere exemption in 18 Pa. C. S. §7321, a criminal statute, does not amount to a grant of power, nor does it notify interested parties that the Philadelphia Police Department does in fact require the submission to a polygraph test before reinstatement as standard procedure.

Here the controlling precedent is *DeVito v. Civil Service Commission of the City of Philadelphia,*[5] 404 Pa. 354, 172 A.2d 161 (1961), where the Supreme Court held that a Philadelphia police officer's refusal to submit to a polygraph test did not constitute just cause for dismissal where

nowhere in the City Charter, the City Ordinances, the Civil Service Regulations, or the Police Department regulations is there a provision which authorizes the Police Commissioner or the Civil Service Commission, expressly or by implication, to force a city employee to sub-

---

[5] This case is also cited as *Stape v. Civil Service Commission.*

mit to a polygraph test or authorizes a dismissal for refusal to take such a test.

*DeVito,* 404 Pa. at 359-60, 172 A.2d at 174.

Although the city has suggested that *DeVito* has been overruled by the passage of 18 Pa. C. S. §7321, we do not agree. Before the passage of 18 Pa. C. S. §7321, no law prohibited the use of polygraph tests as a condition of employment or continued employment, and no law expressly permitted officials in law enforcement to require the polygraph as a condition of employment or continued employment. The passage of the provision established a general proscription against the use of the polygraph by employers as a condition of employment, but it merely exempted law enforcement officials from that general proscription. Accordingly, the passage of the provision granted no further authorization to law enforcement officials regarding the use of the polygraph than they enjoyed before its passage.

We believe that the need for a local regulation which empowers local officials to act, as stated in *DeVito,* is applicable here.

Accordingly, we conclude that the trial court erred in determining that the police department may condition reinstatement upon the submission to a polygraph test when the department has not announced that policy in advance by written regulation. We reverse the denial of Marion's motion for summary judgment, and reverse the granting of summary judgment in favor of the city. Marion is entitled to be reinstated to his former position, without submission to a polygraph examination.

ORDER

Now, February 19, 1986, the decision of the Court of Common Pleas of Philadelphia County, January Term, 1981 No. 1495, dated October 11, 1983, is re-

versed and this case is remanded with a direction to grant summary judgment in mandamus, commanding that the appellant shall be reinstated without the requirement of submitting to a polygraph examination.

Jurisdiction relinquished.

Judge COLINS dissents.